M.C. JEFFERS, Al Porter, Evangeline Brown, Clyde Collins, Earl Foster, the Rev. Ellihue Gaylord, Shirley M. Harvell, Linda Shelby, J.C. Jeffries, Joseph Perry, Clinton Richardson, T.E. Patterson, Earnest Simpson, Brian Smith, and Charlie Statewright, on Behalf of Themselves and All Others Similarly Situated,* Plaintiffs,

v.

Bill CLINTON,** In His Official Capacity as Governor of Arkansas and Chairman of the Arkansas Board of Apportionment; W.J. McCuen, In His Official Capacity as Secretary of State of Arkansas and Member of the Arkansas Board of Apportionment; and Winston Bryant, In His Official Capacity as Attorney General of Arkansas and Member of the Arkansas Board of Apportionment, Defendants.

No. H–C–89–004.

United States District Court, E.D. Arkansas, E.D.

Feb. 23, 1993.

See also, 796 F.Supp. 1202.

Olly Neal, Kathleen Bell, Wilson, Bell & Neal, Helena, AR, P.A. Hollingsworth, Hollingworth Law Firm, Little Rock, AR, Don E. Glover, Dermott, AR, Penda D. Hair, Washington, DC, Julius L. Chambers, Sherrilyn Ifill, New York City, L.T. Simes, Simes & Associates, West Helena, AR, for plaintiffs.

Frank J. Wills, II, Asst. Atty. Gen., Little Rock, AR, for defendants.

Before RICHARD S. ARNOLD, Chief Circuit Judge, EISELE, Senior District Judge, and HOWARD, District Judge.

RICHARD S. ARNOLD, Chief Circuit Judge.

The plaintiffs in this voting-rights case have objected to particular aspects of the 1991 Arkansas Apportionment Plan, which draws the election-district lines for the Arkansas House and Senate. The defendants, members of the State Board of Apportionment, urge summary judgment rejecting some of the plaintiffs' objections to the Plan. The defendants claim that the Plan is the result of a settlement agreement upon which they should be allowed to rely. For the reasons set forth below, we deny the defendants' summary-judgment motion.

---

* O.C. Duffy and Lavester McDonald have died and therefore are no longer listed as plaintiffs.

** Bill Clinton has resigned as Governor of Arkansas and has been succeeded by Jim Guy Tucker.

Governor Tucker has thus become Chairman of the Arkansas Board of Apportionment. In the future, his name will be substituted as a party defendant for that of former Governor Clinton.

## I.

Earlier in this case, the plaintiffs challenged the 1981 Apportionment Plan, and we held that portions of that plan violated Section 2 of the Voting Rights Act of 1965, 42 U.S.C. § 1973 *et seq.* (1988). *Jeffers v. Clinton,* 730 F.Supp. 196 (E.D.Ark.1989), *aff'd mem.,* 498 U.S. 1019, 111 S.Ct. 662, 112 L.Ed.2d 656 (1991). When addressing other challenges to the 1981 Plan and to voting statutes and practices in *Jeffers v. Clinton,* 740 F.Supp. 585, 602 (E.D.Ark. 1990), *appeal dismissed,* —— U.S. ——, 111 S.Ct. 1096, 112 L.Ed.2d 1200 (1991), we recognized the Board's obligation to develop another apportionment plan after the 1990 census. We directed that the 1991 Apportionment Plan not go into effect immediately after the Board adopted it. Rather, we held that this Court would retain jurisdiction during the 60 days following final adoption of the Plan in order to entertain "any challenge by the plaintiffs in this case to such plan." *Id.*

At its final hearing on the 1991 Apportionment Plan on October 11, 1991, the Board of Apportionment approved its staff's proposed Apportionment Plan, but the parties agreed that the staff would make minor adjustments to some district lines before the Plan would become final. State of Arkansas Board of Apportionment Hearing, October 11, 1991, at 36–40, 62–63. The parties later stipulated that the "fine-tuned" 1991 Apportionment Plan became final on October 29, 1992, and that the 60–day period for filing objections to the Plan began on that day.

The original plaintiffs, represented by P.A. Hollingsworth, and a subgroup of the original plaintiffs, represented by L.T. Simes II and John W. Walker, each filed objections to different aspects of the Plan. The Hollingsworth plaintiffs objected to the one Senate district that the Plan established in Pulaski County and urged the creation of two Senate districts there. The Simes plaintiffs objected to House and Senate districts in both Pulaski County and East Arkansas. In response to both groups' objections, the defendants filed a motion for summary judgment, and we issued a partial ruling on that motion on March 20, 1992. We denied the defendants' summary-judgment motion concerning the Hollingsworth plaintiffs' objection to the Pulaski County Senate districts, and that objection remains to be tried on the merits. We granted summary judgment for the defendants as to the Simes plaintiffs' objections to the Pulaski County part of the Plan because those plaintiffs either lacked standing to object to Pulaski County district lines or did not file their objections on time. We also rejected the defendants' argument that we had no power to retain jurisdiction to review challenges to the 1991 Plan. We did not decide one of the defendants' contentions, and we resolve it here.

## II.

The Simes plaintiffs object to the 1991 Plan's drawing of the East Arkansas or Delta districts, and they urge the Board to add one additional Senate and one additional House district in that area.[1] The remaining issue we must resolve here is whether, as the defendants argue in their summary-judgment motion, the plaintiffs are barred from raising this objection because the 1991 Plan is the result of a settlement agreement between the parties which would bind all plaintiffs to the final Plan. The defendants' summary-judgment motion may be granted only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

The defendants claim that Mr. Hollingsworth was lead counsel for all *Jeffers* plaintiffs at least until the end of December 1991, when the Simes plaintiffs requested an extension of time to object to the Plan,

---

1. The Plan establishes four House districts and one Senate district with black majority voting age populations ("VAP") in order to maximize the number of East Arkansas districts with a "super-majority," that is, black VAP of at least 60%. The Simes plaintiffs believe that these super-majority districts are unnecessary and advocate instead the creation of at least five House and two Senate black VAP districts. They believe that more black legislators would be elected if the Plan increased the number of districts with black majorities, even though this would decrease the number of "safe" seats by reducing the number of Delta super-majority districts.

and that Mr. Hollingsworth settled the case for the plaintiffs by agreeing to the Plan at hearings held on October 4 and October 11, 1991. In response, the Simes plaintiffs argue that Mr. Hollingsworth lacked authority to settle the case for them, the final Plan was not the result of a settlement agreement, and the defendants have not shown the existence or terms of the alleged settlement agreement.

█ Mr. Simes has presented affidavits from some of the *Jeffers* plaintiffs stating that they had not given Mr. Hollingsworth authority to settle the case. Affidavit of Earnest Simpson; Affidavit of Linda Shelby. These documents raise the factual question whether, even if there is an agreement, Mr. Hollingsworth had authority to bind the plaintiffs to it. Arkansas law requires attorneys to obtain specific authority before entering into settlement agreements on behalf of their clients. *McKenzie v. Boorhem,* 117 F.Supp. 433, 435 (W.D.Ark.1954). Thus, Mr. Hollingsworth must have gotten authority to settle the case (if indeed there was any settlement), and it is not clear that he did.

█ The defendants emphasize that the Board solicited the plaintiffs' suggestions when preparing the 1991 Plan and adopted some of them in the final Plan. This, however, does not end the matter. The defendants have shown neither a written settlement agreement nor any affidavit establishing the contents of the alleged agreement. It seems to us inconceivable that a matter of this magnitude would be settled without a formal writing embodying the terms of a settlement. Mr. Hollingsworth referred to the process of establishing the Plan as one reaching an "agreement," State of Arkansas Board of Apportionment Hearing, October 4, 1991, at 122, said that there was not "much disagreement" except in the Pulaski County area, *id.* at 8, and, as the defendants note, Mr. Hollingsworth agreed with the Board's Plan for some districts. *Id.* at 14–15, 17; October 11 Hearing at 54, 57. However, counsel objected to or urged alternative proposals for parts of the Board's East Arkansas Plan during both of the October 1991 hearings, October 4 Hearing at 16–17; October 11

Hearing at 23–35, 48, and the Board rejected some of his proposals. October 11 Hearing at 5–10, 17–18, 46–47.

Moreover, the parties referred frequently to the plaintiffs' rights to object to the Plan. For example, Mr. Hollingsworth said:

> Whatever happens next Friday, the plaintiffs have the right to review what you vote on and then we have the right to challenge that within 60 days of that approval.... Our only right is that we have the advantage to go immediately into court and challenge the Board of Apportionment's decision under Jeffers....

October 4 Hearing at 122–23; see also October 11 Hearing at 18.

The defendants made similar statements. At the October 11 hearing, just before the Board voted to adopt its staff's proposed plan for the House districts in East Arkansas, Governor Clinton and others on the Board and its staff discussed with Mr. Hollingsworth and with Tim Humphries, an Assistant Attorney General, the plaintiffs' rights to object. For example, the Governor said:

> I think it is a strong consensus of the Board that we need to vote on the plan today and to defer it to the court so that all objections can be heard there too. I would like to propose that if we vote to adopt this plan, that we do so with the proviso and with no prejudice to any rights of appeal that you might have on any issue.

October 11 Hearing at 36. The Governor and Mr. Hollingsworth continued to discuss the plaintiffs' right to "appeal" the Board's approval of the Plan after it was fine-tuned, *id.* at 36–39, with the Governor recognizing that the plaintiffs "are going to want to do it." *Id.* at 38–39. The Governor said that there was a "clear understanding that [the fine-tuning of the Plan] ... imposes no responsibility on [plaintiffs] ... not to appeal whatever [district] lines we ultimately present." *Id.* at 37.

This exchange took place in the midst of the discussion of Pulaski County, which was not included in the area for which the *Jeffers* opinion prescribed a remedy, *Jeffers v. Clinton,* 730 F.Supp. at 217, and which,

according to the defendants, is the only area in which the Board and Mr. Hollingsworth did not reach a settlement agreement. Statements of the Board, however, show that the defendants did not think that the preservation of the plaintiffs' rights to object was limited to Pulaski County. The Governor specifically mentioned the possibility of challenges to the Delta portions of the Plan. October 11 Hearing at 51.

We hold, as a matter of law, that there was no settlement agreement. The motion for summary judgment must be denied.

### III.

For the foregoing reasons, the Simes plaintiffs' objection to the House and Senate districts in East Arkansas may proceed to trial on the merits. As noted above, the Hollingsworth plaintiffs' objection to the Pulaski County Senate district likewise remains to be tried on the merits.

EISELE, Senior District Judge, concurring.

While I do not believe that this Court has jurisdiction of this matter and further believe that these plaintiffs should be estopped from asserting, as the principal basis of their present claims, a theory of black majorities that is contrary to that asserted by them in their 1989 attack on the 1981 redistricting, I nevertheless concur with my brothers on the narrow issue reserved by the majority of this Court in its March 20, 1992, order. That issue is whether the challenges made by the plaintiffs represented by Mr. Simes to the 1991 Plan for districts in Eastern Arkansas are barred by a settlement agreement. The defendants contend that the 1991 Plan is the result of a settlement agreement between the parties which would bind all of the named plaintiffs to that Plan. I agree with the majority's conclusion that the defendants' motion for summary judgment on this issue should be denied.

I continue to reserve my right to state at a later time my views on these and related issues.